# COURT OF APPEALS
## DECISION
## DATED AND FILED

## May 7, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1140**

Cir. Ct. No. **2008CF228**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PETER J. WEYKER,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Kloppenburg and Nashold, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. In 2009, a jury convicted Peter J. Weyker of eight counts involving the sexual assault of his then fifteen-year-old daughter in July 2008 and the taking or attempted taking of videos showing nudity of four teenagers in June and July 2008. Weyker makes six arguments in this appeal: (1) Weyker's trial counsel provided ineffective assistance when he failed to appear on the morning of the first scheduled trial date; (2) a 2013 change in the Wisconsin State Crime Laboratory DNA Manual regarding the reporting of DNA quantities below a certain threshold is newly discovered evidence requiring a new trial on the sexual assault charges; (3) a 2013 article reporting on the possibility of speculum contamination of DNA samples is newly discovered evidence requiring a new trial on the sexual assault charges; (4) alternatively, if the speculum contamination article is not newly discovered evidence, then trial counsel provided ineffective assistance for failing to argue possible speculum contamination at trial and the prosecutor violated Weyker's due process rights by making a false closing argument that did not acknowledge possible speculum contamination; (5) Weyker's prior appellate counsel provided ineffective assistance for failing to raise ineffective assistance of trial counsel based on trial counsel's failure to appear on the first scheduled trial date and to argue possible speculum contamination; and (6) Weyker is entitled to a new trial on the sexual assault charges in the interest of justice. For the reasons stated below, we reject Weyker's arguments and affirm.

## BACKGROUND

¶2 The following undisputed facts provide context for the issues raised on appeal. We present additional facts as pertinent to each of Weyker's arguments in the Discussion section that follows.

¶3 In July 2008, Weyker's daughter reported to law enforcement that Weyker had sexually assaulted her. In December 2008, the State filed an amended information charging Weyker with one count of sexual assault of a child and one count of incest based on a July 11, 2008 incident involving Weyker's daughter; one count of repeated sexual assault of a child involving Weyker's daughter during the time period between December 1, 2006 and July 10, 2008; and two counts of making a visual representation of nudity without consent, where the person depicted has a reasonable expectation of privacy (referred to in this opinion as "capturing nudity"), involving two teenagers who were not Weyker's daughter, in June or July 2008.

¶4 On the morning of July 27, 2009, when Weyker's jury trial was scheduled to begin, Weyker's trial counsel did not appear in court, and after three telephone calls to the court in which trial counsel explained why he was absent and unable to return at that time, the court rescheduled the trial to begin approximately one month later, on August 24, 2009.

¶5 On July 29, 2009, the State moved to file a second amended information adding to the pre-existing five counts the following eleven counts: three counts of sexual assault of a child and three counts of incest for incidents involving Weyker's daughter in December 2006 and June 2008; and five counts of capturing, or attempting to capture, nudity involving four teenagers who were not Weyker's daughter in June and July 2008. [R.47; 48] The circuit court granted the State's motion to file the second amended information over Weyker's trial counsel's objection at a hearing on August 5, 2009.

¶6 The jury trial took place over the five days from August 24 to August 28, 2009. Trial witnesses included: Weyker's daughter; her mother, to

whom she first reported the July 11, 2008 sexual assault; the detective to whom the daughter subsequently reported that sexual assault; the Sexual Assault Nurse Examiner ("SANE nurse") who examined the daughter when she reported that sexual assault; the State of Wisconsin Crime Laboratory forensic scientist who analyzed DNA samples associated with that sexual assault; the officers who found and processed the cameras containing the video recordings of nudity at Weyker's residence; and the teenagers depicted in the video recordings of nudity.

¶7 One capturing nudity count was dismissed at trial, and the jury convicted Weyker of the remaining six capturing nudity counts, and the one sexual assault count and one incest count for the July 11, 2008 incident involving Weyker's daughter. Judgments of conviction for those counts were entered in March and May 2010.

¶8 Later in 2010, Weyker's appointed appellate counsel filed a no-merit appeal, Weyker filed a response in April 2011, and in 2012 this court affirmed based on the no-merit report and Weyker's response. In its decision affirming the judgments of conviction, this court addressed the circuit court's decision regarding: the denial of Weyker's pretrial motion to sever counts related to three different victims and to exclude other acts evidence; the sufficiency of the evidence; the sentence imposed by the circuit court; and, as raised by Weyker in his response to the no-merit report, whether Weyker's trial counsel was ineffective by failing to hire an expert to challenge the DNA evidence.

¶9    In October 2013, Weyker pro se filed a motion for postconviction relief under WIS. STAT. § 974.06 (2017-18),[1] which the circuit court denied without a hearing in 2014. Pertinent to this appeal, the circuit court denied Weyker's claim that his trial counsel was ineffective for not appearing on the first scheduled trial date, concluding that trial counsel's conduct, while deficient, did not prejudice Weyker's defense in that it did not affect the prosecutor's decision-making related to adding the new charges, and the additions were "fairly made and within [the] parameters of the law." In 2016, this court affirmed, ruling that the ineffective assistance of trial counsel claim was procedurally barred and that the reason Weyker offered for failing to raise the claim in the first appeal, ineffective assistance of appellate counsel, was inadequately pleaded. This court noted in particular that Weyker's allegations of ineffective assistance of trial and appellate counsel were insufficient in the absence of any explanation "why trial counsel was unable to appear at the scheduled trial." Weyker's subsequent motion for reconsideration was denied.

¶10    In 2016 and 2018, Weyker, represented by new, current counsel, filed a motion and two subsequent supplemental motions for postconviction relief under WIS. STAT. § 974.06. The motions sought relief based on arguments relating to the following five issues: (1) ineffective assistance of trial counsel for not appearing on the first day of trial, based on new investigation revealing that trial counsel had provided false reasons for his failure to appear, and for not seeking independent DNA analysis of vaginal swabs; (2) ineffective assistance of postconviction counsel for failing to raise the claims of trial counsel's

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

5

ineffectiveness; (3) newly discovered evidence consisting of changes in the State Crime Laboratory's DNA manual; (4) newly discovered evidence consisting of a report on possible speculum contamination; and (5) the trial prosecutor's violation of Weyker's due process rights by making an argument based on speculum contamination that the prosecutor knew, or should have known, was false. The circuit court denied the motions.

¶11　As summarized in the first paragraph of this opinion, Weyker appeals.

## DISCUSSION

¶12　We address each of Weyker's arguments in turn.

### I. Trial Counsel's Failure to Appear on the First Scheduled Trial Date

¶13　Weyker argues that his trial counsel was ineffective for not appearing on the first scheduled trial date, and that appellate (no-merit) counsel was ineffective for not raising this issue. Specifically, Weyker argues that recent investigation by his current counsel revealed that trial counsel's stated reasons for his failure to appear on the first scheduled trial date were false, and that trial counsel's failure to appear resulted in the trial being rescheduled approximately one month later, during which time the State filed an amended information adding eleven counts to the five counts previously charged, which in turn resulted in an increased sentence. The circuit court determined that, while trial counsel was deficient, Weyker could not show that trial counsel's failure to appear prejudiced Weyker. As we explain, we agree that Weyker has failed to show prejudice. We first state the standard of review and applicable legal principles; we next

summarize additional pertinent background; and we then explain why we conclude that Weyker fails to meet his burden to show prejudice.[2]

*A  Standard of Review and Applicable Legal Principles*

¶14     To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984); ***State v. Thiel***, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d 305. Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." ***Thiel***, 264 Wis. 2d 571, ¶19. Deficient performance is constitutionally prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.***, ¶20 (citation omitted). The circuit court's findings of fact will be upheld unless they are clearly erroneous, but whether counsel's performance satisfies the constitutional standard for ineffective assistance of counsel is a question of law which we review de novo. ***Id.***, ¶21. We need not address both aspects of the ***Strickland*** test if the defendant does not make a sufficient showing on one of them. *See* ***Strickland***, 466 U.S. at 697.

---

[2] The State argues that this claim is procedurally barred from this court's review. We do not reach this issue because our rejection of Weyker's argument based on failure to show prejudice is dispositive. *See* ***Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.")

The State also argues that most or all of the other issues that are raised by Wekyer on this appeal and which we address below are procedurally barred, but we do not reach that argument because our resolution of each of Weyker's appellate issues on other grounds is dispositive.

### B. Additional Pertinent Facts

¶15    On the morning of Weyker's first scheduled trial date, July 27, 2009, Weyker's trial counsel informed the circuit court by telephone that he was unable to appear in court and explained that, the night before, he unexpectedly had to fly to Tennessee because a relative had died. The court continued the trial until two days later. Weyker's counsel called the court on July 28, 2009 to explain that he could not return to Wisconsin in time for trial due to flooding in Tennessee. On July 29, 2009, the State moved to file the second amended information. At a motion hearing on August 5, 2009, the court granted the State's motion, and also rescheduled the trial to start on August 24, 2009. Weyker was convicted as stated above at the conclusion of the trial on August 28, 2009.

¶16    In November 2009, Weyker filed a pro se motion to terminate his trial counsel for not appearing on the first scheduled trial date, alleging that counsel was not prepared and that the result was the filing of the additional charges and an increased sentence. In his brief supporting his motion to terminate, Weyker alleged that "it was quite evident that [counsel had] never prepared for trial." The circuit court allowed trial counsel to withdraw without reaching Weyker's factual allegations.

¶17    In a postconviction motion filed by Weyker's current counsel in 2016, and twice supplemented in 2018, Weyker asserted, pertinent to this appeal, that he was denied the effective assistance of trial counsel based on trial counsel's failure to appear on the first scheduled trial date, in light of current counsel's investigation revealing that trial counsel's stated reasons for his failure to appear

were false. In May 2018, Weyker's counsel requested a *Machner*[3] hearing. The circuit court addressed Weyker's request for a *Machner* hearing and his 2016 and 2018 motions requesting relief under WIS. STAT. § 974.06 at a non-evidentiary hearing in November 2018. Regarding the claim of trial counsel's ineffective assistance, the court explained that it was "painfully obvious" when trial counsel called the court that trial counsel's reasons for not appearing were "inaccurate" and that he was "clearly seeking adjournment because he was not prepared to proceed." The court determined that trial counsel's conduct was deficient but did not prejudice Weyker. Specifically, the court explained that the filing of the new charges between the time of the first scheduled trial and the time of the actual trial did not prejudice Weyker because the information could have been amended to include the additional charges "previous to the date of the trial or even on the trial date itself," and that the court had the option "to grant additional time to prepare" in response to any such amendment. Accordingly, the court denied the motion alleging ineffective assistance of trial counsel.

## C. Analysis

¶18    We conclude that Weyker fails to meet his burden to show prejudice resulting from trial counsel's failure to appear on the date of the first scheduled trial. Specifically, he fails to show a "reasonable probability" that the State would not have amended the information to include the additional charges had his trial proceeded as originally scheduled. Weyker concedes that the State could have sought to amend the information to include the additional charges before or at trial to conform to the proof at trial pursuant to WIS. STAT. § 971.29(2). However, he

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

argues that it is unreasonable to believe that the State would have done so, and that the court would have permitted the amendment, in light of the prosecutor's statement at the hearing on the State's motion to amend the information, that the prosecutor had been prepared to amend the information shortly before the trial was originally scheduled to start but did not think the circuit court would grant the motion that soon before trial.

¶19    We disagree with Weyker's argument. What the prosecutor thought does not refute what the law is, which is that the State could have sought to add the charges on the day of trial and that the circuit court could grant the request, and, if necessary, provide the defense additional time to respond. Weyker points to no factual record to support the premises on which his arguments are based. Regardless of the prosecutor's statement regarding reluctance before trial, Weyker has failed to show that there is a reasonable probability that, had the trial proceeded as originally scheduled, the State, given that the evidence to be presented at trial included evidence of the additional criminal conduct at issue, would not have sought to amend the information to include the additional charges. Nor has Weyker shown a reasonable probability that the court would not have granted such a request. In sum, Weyker fails to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thiel*, 264 Wis. 2d 571, ¶20. Weyker's failure to show prejudice from trial counsel's failure to appear defeats his ineffective assistance of trial counsel claim.

## II. Newly Discovered Evidence—Changes in Lab Manual Language

¶20    Weyker argues that a 2013 change in the State Crime Laboratory's DNA Manual regarding the reporting of DNA quantities below a certain threshold

is newly discovered evidence requiring a new trial on the sexual assault charges. We first present the standard of review and applicable legal principles; we next summarize the pertinent facts; and we then explain why we conclude that Weyker fails to show that the change in the Manual language meets the "newly discovered evidence" test.

### A. *Standard of Review and Applicable Legal Principles*

¶21     The test for reviewing a request for a new trial based on newly discovered evidence is well established:

> In order to set aside a judgment of conviction based on newly-discovered evidence, the newly-discovered evidence must be sufficient to establish that a defendant's conviction was a manifest injustice. When moving for a new trial based on the allegation of newly-discovered evidence, a defendant must prove: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative. If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt.
>
> A reasonable probability of a different outcome exists if 'there is a reasonable probability that a jury, looking at both the [old evidence] and the [new evidence], would have a reasonable doubt as to the defendant's guilt. A court reviewing newly-discovered evidence should consider whether a jury would find that the newly-discovered evidence had a sufficient impact on other evidence presented at trial that a jury would have a reasonable doubt as to the defendant's guilt. This latter determination is a question of law. Manifest injustice has been shown and a new trial must be ordered when: (1) the four factors of newly-discovered evidence are established; and (2) a court determines that had a jury heard the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt.

*State v. Plude*, 2008 WI 58, ¶¶32-33, 310 Wis. 2d 28, 750 N.W.2d 42 (internal quotations and citations omitted).

### *B. Additional Pertinent Facts*

¶22    At trial, Wisconsin State Laboratory Forensic Scientist Catherine Kohl testified as to her analysis of DNA evidence found on vaginal swabs taken by the SANE nurse during the nurse's examination of Weyker's daughter in July 2008.  Kohl testified that there was a "very small" amount of DNA on the vaginal swabs and that Weyker was included as a possible source of the male DNA on the vaginal swabs.

¶23    At the April 2019 hearing on Weyker's postconviction motion, the parties stipulated that the amount of DNA discovered on the vaginal swabs was 0.00122 nanograms per microliter (ng/µL).  At the hearing, Weyker presented as exhibits several versions of the State Crime Laboratory DNA Manual.  In the Manual versions effective in 2010, 2011, and 2012, section 8.1.8 of the chapter on the procedure to "quantitate DNA evidence" stated, "When human DNA is detected below *0.013* ng/µL the report should state that an insufficient or trace amount of human DNA was present in the sample."  (Emphasis added.)  In the version effective in 2013, section 8.1.7 stated, "When male DNA is detected below *0.0013* ng/µL the report should state that an insufficient or trace amount of male DNA was present in the sample."  (Emphasis added.)  In the version effective at the time of the April 2019 hearing, section 8.7 stated, "When male DNA is detected less than .002 ng/µL the report should state that a limited amount of male DNA was present in the sample."

¶24    Wisconsin State Crime Laboratory Forensic Scientist Kohl testified at the 2019 hearing that:  (1) the 2013 version of the Manual did not ban the

testimony she gave at the 2009 trial; (2) if Kohl were to testify again at a new trial, her testimony would not change from her first trial testimony; and (3) Kohl would still testify if another trial were held that Weyker is included as a possible source of the male DNA on the vaginal swabs. Kohl testified that the changed language in the 2013 Manual reflected the State Crime Laboratory's experience that many samples below the .0013 threshold were not giving useful information upon further testing, especially for mixture profiles, but that for single-source profiles, such as the profile in this case, further testing could provide useful information, and it was left to the analyst's discretion whether to do further testing. In response to questioning by the court, Kohl confirmed that in this case, with further testing, Kohl obtained from the sample "information that had probative value."

¶25 The circuit court concluded that the changed language in the 2013 Manual was not newly discovered evidence. The court found that the policy or procedure was changed not because the amounts below the threshold would produce evidence that was unreliable but because further testing in an effort to generate reliable evidence, especially for mixed samples, "was more than the lab was prepared to do in every case." The court found that the changed language did not preclude further testing, especially for single-source samples, and that Kohl could, even if she had operated under the updated Manuals, conduct the same analysis of the DNA sample. Finally, the court found that Kohl's testimony would be the same under the 2013 version of the Manual as it was at trial. Accordingly, the circuit court concluded that the changed language in the Manual was not newly discovered evidence, and denied the postconviction motion asserting newly discovered evidence.

*C. Analysis*

¶26  We conclude that Weyker's argument fails under the weight of the plain language of the Manuals and Kohl's testimony as to what that language means.

¶27  At the outset, we question the premise of Weyker's argument, which assumes that the 2013 Manual language should have been the language governing Kohl's scientific analysis, conduct, and testimony at the 2009 trial. As shown above, the only difference between the language in effect at the time of trial and the language in effect in 2013 is the threshold amount of DNA, and the actual amount present here was below both versions' stated thresholds. Thus, the language requiring reporting the amount at issue as "insufficient" existed both at trial and in 2013, and Weyker fails to explain how the change in threshold amount is material, not cumulative, or reasonably probable to have yielded a different result. Nevertheless, we proceed to address Weyker's argument as presented.

¶28  In the circuit court, Weyker initially argued that Kohl's testimony "would be banned" by the language in the 2013 Manual. That argument is easily rejected, inasmuch as the Manual's language merely states that the amount of DNA detected should be reported as "insufficient" or "trace," not that the DNA cannot be tested and the results of such testing cannot be reported. Kohl's unrebutted testimony clarifies that the language in the 2013 Manual advised the analysts that no further testing is required, but left to the analysts' discretion whether any particular sample should be further tested. Kohl's testimony is supported by another provision in each of the Manuals effective both at trial and in 2013, which provides that, "If the analyst deems those samples [below the threshold] appropriate for further processing they should be processed by hand or

14

re-submitted to the robot."   Kohl's testimony is also supported by her own confirmation that further testing of the sample in this case produced useful information.   Thus, Weyker's argument that the changed language meets the newly discovered evidence test because it would "ban" Kohl's trial testimony fails.

¶29   At the 2019 hearing and on appeal, Weyker modified his previous postconviction arguments and argued that, even if the changed Manual language would not ban Kohl's trial testimony, the language would provide a basis for the jury to question the reliability of the results, obtained as they were from a sample required to be labelled "insufficient."   He bases this argument on the assertion that "insufficient" does not mean what Kohl testified it means—unlikely to provide useful information upon further testing, especially for mixture profiles unlike the single-source profile here, but requiring individual discretion whether to do further testing—but instead means "insufficient to provide reliable results."   This argument is unsupported by citation to any authority countering Kohl's testimony to the contrary.[4]

¶30   In sum, there is no support for Weyker's argument that the changed Manual language constitutes evidence that is material and not cumulative, or that its inclusion would be reasonably probable to yield a different result. Accordingly, we affirm the circuit court's conclusion that the evidence does not rise to the legal definition of "newly discovered evidence," even though the

---

[4] Weyker also argued in the circuit court that the changed language is significant because the sample in his case was well below the changed threshold, but Weyker appears to acknowledge on appeal that this aspect of the changed language is merely cumulative of the trial testimony that the sample was "very small."

Manuals Weyker references are "new" in the sense that they were created after his trial.

### III. Newly Discovered Evidence—Possible Speculum Contamination

¶31    Weyker argues that a 2013 article reporting on the possibility of speculum contamination of DNA samples is newly discovered evidence requiring a new trial on the sexual assault charges. Having set out the newly discovered evidence test above, we next summarize the additional pertinent background and then explain why we conclude that there is no reasonable probability that, had the jury heard this new evidence together with the evidence presented at trial, it would have had a reasonable doubt as to Weyker's guilt.

### A. Additional Pertinent Background

¶32    As stated, Weyker faced separate charges of sexual assault on three different dates: December 2006; June 11, 2008; and July 11, 2008. The jury acquitted Weyker of the charges relating to the first two dates and convicted him of the charges relating to the third.

¶33    Weyker's daughter testified that Weyker began touching her inappropriately in December 2006 and had sexual intercourse with her over fifty times between January 2007 and August 2008. Other than the July 11, 2008 incident, she could not recall any details about any of the sexual assaults other than that they occurred mostly on sunny days, in either her bedroom, the bathroom, or Weyker's bedroom.

¶34    As to the December 2006 sexual assault charges, Weyker's daughter testified how Weyker began touching her inappropriately in December 2006, and

16

she also testified about a December 20, 2006 entry in her diary where she wrote that she was afraid that she might be "pregnant by" her father.

¶35 As to the June 2008 sexual assault charges, the State presented videos dated June 11, 2008 showing a hand touching someone's pubic and vaginal areas and a penis penetrating a vagina. Weyker's daughter testified that the vagina in both images was hers, but that she could not identify to whom the hand and penis belonged.

¶36 The following evidence was presented as to the July 2008 sexual assault charges. Weyker's daughter testified as to how she came to be at Weyker's home on July 11, 2008, what she did when she arrived, what Weyker did when he had sexual intercourse with her, what she did afterwards, how she told her mother about the sexual assault after she returned to her mother's house, and that she reported the sexual assault to law enforcement on July 13, 2008.

¶37 The SANE nurse testified that she examined Weyker's daughter immediately after Weyker's daughter talked with law enforcement, approximately forty hours after the sexual assault. The nurse testified that the daughter told her that on July 11, 2008, Weyker's fingers and penis had contact with her external genitals, and that his penis had penetrated her vagina. The nurse testified that she used four swabs to take material from the daughter's vagina. To obtain the vaginal swabs, the nurse testified that she first opened the vagina with a speculum and then inserted each of the four swabs through the speculum and applied each swab around the inside of the vagina, without touching the exterior parts of the vagina. The nurse acknowledged that DNA from one person's skin cells could be transferred from clothing to another person's skin.

¶38    State Crime Laboratory Forensic Scientist Kohl testified as to her analysis of DNA evidence on the vaginal swabs and on the crotch and waistband of a pair of underwear that Weyker's daughter said she was wearing on the day of the July 11, 2008 sexual assault, and which she gave to law enforcement on July 17, 2008. Kohl testified that Weyker was a possible source of the DNA on the crotch and vaginal swabs, and that the DNA on the waistband was from at least three males including Weyker. As to the DNA profile that was extracted from the DNA on the vaginal swabs, Kohl testified that one in fifteen males would statistically share that particular DNA profile. Kohl testified that there was no semen found on the swabs or underwear and that the DNA found could come from the sexual assault or, regarding the DNA on the underwear, from someone shedding skin cells, such as while folding laundry, or from someone sneezing.

¶39    Weyker's daughter testified that it was not uncommon for Weyker to take her laundry out of the dryer and put it in her room.

¶40    In its closing argument, the State emphasized the DNA evidence identifying Weyker as a possible source of the DNA on the vaginal swabs, how the nurse inserted the swabs through the speculum to obtain the evidence from inside the vagina, and how the daughter identified only Weyker as having had sexual intercourse with her on July 11. In his closing argument, Weyker emphasized the inconsistencies in Weyker's daughter's testimony as to the July 11 incident, that one in fifteen males share the DNA profile extracted from the vaginal swabs, that not all the markers could be detected and so Weyker could not be eliminated as a source, and that the DNA evidence was minuscule and could have come from other sources including skin cells, such as when Weyker touched his daughter's clothing when moving her laundry from the dryer to her room. In its rebuttal argument, the State argued that Weyker's emphasis on the possibility

of the DNA coming from something other than sexual intercourse "ignore[d] the place where this particular DNA was found," and the absurdity of the DNA coming from other sources like sneezing or touching when the nurse demonstrated how she inserted the swabs through the speculum and did not touch the exterior of the vagina.

¶41    In the postconviction motion at issue here, Weyker presented a 2013 article that reported on studies showing the possibility of contamination from use of a speculum to obtain DNA evidence in a vagina with cells originating from the external genital area.  In the motion, Weyker noted that at trial his trial counsel had an "innocent" explanation of how the DNA evidence could have got onto the underwear and the exterior of the vagina, but did not have an explanation for how the DNA could have got on the vaginal swabs taken from inside the vagina. However, Weyker argued, had Weyker's trial counsel had the information from the 2013 article, he could have also had an alternative explanation of how Weyker's DNA was found inside the vagina, namely, by speculum contamination. Therefore, according to Weyker, because the DNA corroboration from the vaginal swabs was the only distinction between the July 11 sexual assault, of which Weyker was convicted, and the December 2006 and June 2008 sexual assaults, of which Weyker was acquitted, there was a reasonable probability of a different result had the jury heard this new information.  The circuit court determined that the studies regarding speculum contamination did not rise to the level of newly discovered evidence both because at trial Weyker *did* probe the possibility of speculum contamination, in response to which the nurse testified that the swabs could not have picked up cells on the outside of the vagina, and because it was "far too speculative" to prove that the result of trial probably would have been different.

¶42     Weyker renews his contaminated speculum argument on appeal.

¶43     We assume, without deciding, that the possibility of contamination by use of the speculum itself is new evidence. However, as we explain, we agree with the circuit court that, even if this evidence were introduced at trial, there would not have been reasonable probability of a different result.

¶44     As stated, Weyker argues that the DNA corroboration was the only distinction between the July 11 sexual assault charges and the other charged sexual assaults of which Weyker was acquitted, and that by calling that corroboration into doubt the article would have led the jury to also acquit Weyker of the July 11 sexual assault charges. Weyker asserts that the jury acquitted Weyker on some of the charges involving his daughter because the jury did not find Weyker's daughter credible, and thus because they found his daughter incredible, the only reason they convicted Weyker on the July 11, 2008 charges was because of evidence other than the testimony of his daughter, namely, the DNA evidence. This string of assertions is without any support beyond Weyker's pure speculation as to the jury's reasons for its acquittals and convictions. Moreover, Weyker's argument plainly fails because it disregards other distinctions between the evidence relating to those sexual assaults and the July 11 sexual assault.

¶45     While Weyker's daughter provided no specific testimony as to the December 2006 and June 2008 incidents, she provided specific detail as to the July 2008 incident, both at the time and at trial one year later. Both when reporting to law enforcement in July 2018 and at trial, she could not provide any details of the December 2006 and the June 2008 incidents. There were also inconsistencies in her statements and the testimony as to the timing of both, including her own testimony that sexual intercourse began in January 2007 or did

not take place until she was fifteen (which would have been after November 2007), and testimony suggesting she was not at Weyker's house at the time she alleged the June 2008 assault occurred.

¶46     In contrast, Weyker's daughter testified at the August 2009 trial, as she had to law enforcement and to the SANE nurse on July 13, 2008, with great specificity as to the circumstances surrounding and the details comprising the sexual assault on July 11, 2008.  The July 11 incident was the only one Weyker's daughter reported to law enforcement.  While there were inconsistencies between her contemporaneous reports and her trial testimony as to some of the before-and-after details, her statements in her reports on July 13, 2008 and in her testimony at trial in August 2009 describing Weyker having sexual intercourse with her specifically on July 11, 2008 were uncontroverted.

¶47     In sum, there is not a reasonable probability that the "new" evidence that there may have been speculum contamination, such that the DNA material on the vaginal swabs may have come from the exterior vaginal area, would have changed the result at trial given the only specific evidence Weyker's daughter provided, through her contemporaneous statements to law enforcement and the SANE nurse and her testimony at trial, as to the detailed description of Weyker's having sexual intercourse with her on July 11, 2008.

*IV.  Ineffective Assistance of Trial Counsel and Due Process Violation Regarding Possible Speculum Contamination*

¶48     Weyker argues in the alternative that, if the speculum contamination article *is not* newly discovered evidence, his trial counsel provided ineffective assistance for failing to argue possible speculum contamination at trial, and the prosecutor violated Weyker's due process rights by making a false closing

21

argument that did not acknowledge possible speculum contamination. Because we have assumed, without deciding, that the speculum contamination article *is* newly discovered evidence, these arguments fall away.

## *V. Ineffective Assistance of Appellate Counsel*

¶49 Weyker argues that prior appellate counsel provided ineffective assistance for failing to raise ineffective assistance of trial counsel based on trial counsel's failure to appear on the first scheduled trial date and failure to argue possible speculum contamination. Because we have concluded that Weyker fails to show that trial counsel provided ineffective assistance, and that the speculum contamination evidence would not have changed the result at trial, Weyker cannot show that prior appellate counsel's failure to raise these claims prejudiced him.

## *VI. New Trial in the Interest of Justice*

¶50 Weyker argues that he is entitled to a new trial on the sexual assault charges in the interest of justice because the absence of the evidence of possible speculum contamination prevented the real controversy from being fully tried. *See* WIS. STAT. § 752.35. However, we have already explained why it was not reasonably probable that the absence of that evidence had any effect on the outcome of trial. We therefore decline to exercise our discretion to reverse Weyker's convictions on the sexual assault charges in the interest of justice.

## CONCLUSION

¶51 For the reasons stated, we reject Weyker's arguments and affirm.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE § 809.23(1)(b)5.